T.C. Memo. 2008-66

UNITED STATES TAX COURT

ANCIL N. PAYNE, JR. AND MARY E. K. PAYNE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21634-06.                    Filed March 18, 2008.

Ancil N. Payne, pro se.

<u>Trent D. Usitalo</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined a deficiency of $5,410 in petitioners' Federal income tax for 2004.[1]  The sole issue for decision is whether petitioners should have included $16,678 of

_____

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

discharge of indebtedness income on their 2004 Federal income tax return.  We hold that they should have done so and therefore sustain respondent's determination.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference.  At the time they filed their petition, petitioners resided in Minnesota.

At the end of 1992 petitioner Ancil N. Payne, Jr. (Mr. Payne), opened a credit card account with MBNA America Bank.  Mr. Payne used the credit card to pay hospital bills and receive cash advances during periods of unemployment.  By April 26, 2004, Mr. Payne had accumulated $21,407 of credit card debt.  At no time did Mr. Payne challenge the accuracy of this amount.  Petitioners were not insolvent in 2004, nor did they file for bankruptcy.

By October 19, 2004, Mr. Payne and MBNA entered into an agreement whereby MBNA agreed to accept $4,592 as a full settlement of the account balance of $21,270, payable in installments over 4 months.[2]  Mr. Payne made the necessary payments, and MBNA issued him a Form 1099-C, Cancellation of Debt, reporting $16,678 of discharge of indebtedness income.

---

[2]  Several of these payments had already been made by the time the agreement was formalized.

On petitioners' 2004 Form 1040, U.S. Individual Income Tax Return, filed jointly in April 2005, petitioners did not report any discharge of indebtedness income.  Instead, petitioners attached a statement to their return which disclosed that they received a Form 1099-C from MBNA that reported discharge of indebtedness income of $16,678.  The statement also explained that petitioners believed the amount disclosed on the Form 1099-C was not subject to income tax.

Respondent's determination of a deficiency in petitioners' Federal income tax for the taxable year 2004 was attributable to petitioners' failure to report the discharge of indebtedness income.[3]

OPINION

Section 61 generally defines gross income as "all income from whatever source derived".  Section 61(a)(12) specifically provides that gross income includes income from the discharge of indebtedness.  See also Gitlitz v. Commissioner, 531 U.S. 206, 213 (2001); United States v. Kirby Lumber Co., 284 U.S. 1 (1931). Respondent determined that MBNA's agreement with Mr. Payne to accept $4,592 in full settlement of the undisputed account

---

[3]  The deficiency is also based on a greater portion of petitioners' Social Security income becoming taxable and the disqualification of petitioners for the earned income credit. Both of these adjustments stem from the increased gross income petitioners would have as a result of the discharge of indebtedness.

balance of $21,270 resulted in $16,678 of discharge of indebtedness income to petitioners. Petitioners bear the burden of proving respondent's determination incorrect.[4] See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

## I. Reduction of Purchase Price

Petitioners contend that their settlement with MBNA did not result in the discharge of indebtedness but was rather a retroactive reduction of the rate of interest charged by MBNA and thus a reduction of the "purchase price" of the loans under section 108(e)(5). Although the record does not indicate that MBNA agreed to retroactively reduce the rate of interest of its loans to petitioners, petitioners have nevertheless painstakingly calculated the various interest rates that applied to their outstanding balances from October 1994 through October 2004 and attempt to show that by the time of their settlement they had paid back all of the principal they had borrowed from MBNA.

Section 108(e)(5) provides an exception to section 61(a)(12) where the buyer of property negotiates with the seller/creditor for a discharge of all or part of the purchase money indebtedness. Commonly such a discharge reflects a decline in the value of the property. The resulting discharge of

---

[4] Petitioners do not argue that the burden of proof shifts to respondent pursuant to sec. 7491(a) and that the threshold requirements of sec. 7491(a) have been met. In any event, we decide the issue on the basis of the preponderance of evidence on the record.

indebtedness is characterized not as taxable income but in effect as a retroactive reduction of the purchase price.  Where, however, the only relationship between the parties is that of debtor and creditor, "The rule of Kirby Lumber is clearly applicable".  OKC Corp. & Subs. v. Commissioner, 82 T.C. 638, 647 (1984).

Petitioners argue that the lending of money in a generic credit card transaction constitutes the sale of "property" under section 108(e)(5).  Petitioners are mistaken.  MBNA effectively lent petitioners money to be used for health care costs and general living expenses.[5]  The only relationship between the parties was that of debtor and creditor, and thus section 108(e)(5) does not apply.  See OKC Corp. & Subs. v. Commissioner, supra at 647.

II.  Discharge of Indebtedness for Interest Payments

Petitioners also allege that no income arises from the discharge of indebtedness for interest payments.  In support of this proposition, petitioners reference Earnshaw v. Commissioner, T.C. Memo. 2002-191.

---

[5]  Insofar as petitioners used the credit card to buy merchandise, the Commissioner treats debt forgiveness in third-party lender cases as a purchase price adjustment only if the forgiveness is directly related to an aspect of the sale, as where a seller inflates the purchase price by misrepresentation. Rev. Rul. 92-99, 1992-2 C.B. 35.

Generally, when a solvent debtor's fixed obligation is reduced or canceled, the amount of the reduction or cancellation constitutes income. Sec. 61(a)(12); United States v. Kirby Lumber Co., supra. In Earnshaw v. Commissioner, supra, we concluded that there had been a legitimate dispute between the debtor and creditor regarding the amount of the debtor's obligation. We held that the taxpayer recognized discharge of indebtedness income from the settlement, but the amount was based on the account balance that the taxpayer admitted to rather than the higher amount the Commissioner alleged. Earnshaw does not stand for the principle that discharge of indebtedness income does not include the cancellation of debt attributable to interest payments.

As no exclusion applies and the amount of petitioners' obligation was clearly fixed, petitioners should have included $16,678 of discharge of indebtedness income in their gross income on their 2004 tax return.

In reaching this holding, the Court has considered all arguments made and, to the extent not mentioned, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.